UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

      Plaintiff,

      v.                        No. **CR 03-892 MCA**

**TEDDY CHIQUITO**,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the following motions: (1) Defendant Teddy Chiquito's *Motion to Prohibit Evidence from NDPS on Garrity Grounds* [Doc. No. 63] filed on April 27, 2004; (2) Defendant's *Motion for Jury to View Alleged Crime Scene and Related Scene with Supporting Authorities* [Doc. No. 74] filed on June 1, 2004; and (3) the United States' *Motion in Limine Concerning Testimony of FBI Special Agent Robert Georgi* [Doc. No. 87] filed on June 8, 2004. The Court heard arguments from counsel at the Call of the Calendar on June 10, 2004. Having reviewed the parties' written submissions and oral arguments, the relevant law, and being fully advised in the premises, the Court denies Defendant's motion for a jury view and grants the United States' motion regarding Agent Georgi for the reasons set forth below. At the Call of the Calendar, Defendant withdrew his motion to exclude evidence of statements he made to other NNDPS employees, and the record shall reflect that this motion is withdrawn.

**I.     BACKGROUND**

Defendant Teddy Chiquito is charged in an *Indictment* [Doc. No. 1] with two counts of assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6) and 1153, two counts of assault with a dangerous weapon in violation of 18 U.S.C. §§ 113(a)(3) and 153, and two counts of discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii).[1]  All of these charges arise from an incident on May 25, 2002, when Defendant allegedly discharged a firearm while retrieving his teenage daughter from a Navajo hogan occupied by his former spouse and the alleged victims in or near Torreon, New Mexico.  At the time of this incident, Defendant was employed as a Navajo Nation police officer but was not on duty.

Defendant has filed two motions in limine.  Defendant's first motion seeks to exclude evidence of statements he made to other members of the Navajo Nation Department of Public Safety (NNDPS) on or after the incident on May 25, 2002.  These other members of the NNDPS include Sergeant Melinda Billie, Officer Lamar Martin, Officer Tony Bicenti, Captain D.K. Thomas, Lieutenant Ed Marble, and Officer Darrell Betonie.  Defendant withdrew this motion at the Call of the Calendar, acknowledging that the motion was based on his own subjective feeling that he had to report information to the above individuals rather than any evidence that he was actually threatened with loss of employment or otherwise compelled to make statements as a result of any official action by the Navajo Nation or any

---

[1]Pursuant to the Court's *Order* [Doc. No. 33] filed on December 10, 2003, the Government was permitted to correct certain typographical errors in the statutory citations in the *Indictment*.

other governmental entity.

Defendant's second motion in limine asks the Court to transport the jurors to the alleged crime scene and a related site during the trial so that they may view these areas. As grounds for this motion, Defendant asserts that jurors are not likely to be familiar with the area in question and the photographs of the scene produced by the Government do not adequately convey the necessary information about these areas. The Government has produced numerous photographs and other evidence of the scene, and the Government maintains that a jury view is not warranted in light of this alternative evidence.

After the Court's pretrial deadline for filing motions in limine, the Government filed a third motion in limine to preclude or limit the testimony of FBI Special Agent Robert Georgi insofar as Defendant seeks to qualify him as an expert under Fed. R. Evid. 702 or elicit a lay opinion pursuant to Fed. R. Evid. 701 concerning the investigation which led to the charges in the *Indictment*. According to the Government, Agent Georgi has no basis for expressing such opinions, as an expert or otherwise, because his involvement in the investigation was limited to back-up assistance in inspecting the crime scene and collecting evidence at the scene.

**II.    ANALYSIS**

    **A.    Defendant's Motion for a Jury View**

Trial courts generally are vested with broad discretion regarding evidentiary rulings on motions in limine. See generally United States v. Wagoner County Real Estate, 278 F.3d 1091, 1099 (10th Cir. 2002). In particular, "[w]hether the jury is permitted to view evidence

outside the courtroom is a matter for the discretion of the trial court." See United States v. Culpepper, 834 F.2d 879, 883 (10th Cir.1987). In addition to the threshold question of whether the out-of-court evidence that the movant wishes the jury to view is admissible under the Federal Rules of Evidence, factors relevant to deciding whether to permit the jury to view evidence outside the courtroom include (1) whether the scene has changed since the events in question occurred, (2) the availability of other, alternative evidence of the scene, (3) the timing of the request, (4) the orderliness of the trial, (5) whether the jury would be confused or misled, (6) whether a visit to the scene would be time-consuming or logistically difficult, and (7) whether cross-examination is permitted regarding the details of the scene. See id.; United States v. Gallagher, 620 F.2d 797, 801 (10th Cir. 1980); United States v. Artberry, 120 F.3d 271, 1997 WL 428616, at *2 (10th Cir. 1997) (unpublished disposition); United States v. Gray, 199 F.3d 547, 549-50 (1st Cir. 1999); United States v. Crochiere, 129 F.3d 233, 236 (1st Cir. 1997).

In this case, Defendant has not made a sufficient showing that these factors weigh in favor of allowing the jury to view evidence outside the courtroom. While Defendant claims the photographs of the scene produced by the Government are not adequate, he has not provided a sufficient explanation as to why other, alternative evidence regarding the scene (such as additional photographs, videotapes, maps, models, or in-court demonstrations) could not be obtained in the many months during which the trial of this matter was continued at his request. In addition, the incident in question occurred during the evening, and thus a daytime visit would not necessarily portray the scene as it appeared to those present at this incident.

Finally, a jury view of the requested locations, especially during the evening, would be logistically difficult and time-consuming given their remote location and distance from the courthouse. These logistical difficulties would increase the risk of unfair prejudice due to inadequate jury supervision. For these reasons and those stated at the Call of the Calendar, Defendant's motion for a jury view is denied.

### B. Testimony of Agent Georgi

The Government has moved to exclude expert testimony or lay opinion by Agent Georgi regarding the result of the Government's investigation of the incident on May 25, 2002. At the Call of the Calendar, defense counsel indicated that she does not intend to offer Agent Georgi as an expert witness or elicit any opinion testimony from him. Defendant has not filed a written response to the Government's motion and offers no basis for opposing the relief requested in the Government's motion. Therefore, the Government's motion is granted and Agent Georgi's testimony shall be limited so as to preclude him from offering opinions about the investigation, whether as an expert or otherwise.

### C. Defendant's Statements to NNDPS Employees

Under Garrity v. New Jersey, 385 U.S. 493 (1967), and its progeny, the Government is not allowed to force police officers and other public employees into a "Hobson's choice" in which they must choose between losing their employment or asserting their Fifth Amendment privilege against self-incrimination. See In re Grand Jury Subpoenas, 40 F.3d 1096, 1101-02 (10th Cir. 1994). Thus, if a governmental employer compels its employees to make incriminating statements by threatening to terminate their employment if they refuse

5

to answer, then the incriminating statements resulting from this official compulsion generally cannot be used against those employees in a criminal prosecution. See id.

The Fifth Amendment privilege against self-incrimination only applies to statements that are compelled by the Government. In this regard, the Fifth Amendment is not "concerned with moral and psychological pressures to confess emanating from sources other than official coercion." Oregon v. Elstad, 470 U.S. 298, 305 (1985). "Thus, '[a]bsent some *officially coerced* self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions.'" United States v. Hollis, 971 F.2d 1441, 1458 (10th Cir. 1992) (quoting Elstad, 470 U.S. at 305).

The Tenth Circuit recently addressed the issue of what level of official compulsion is required to establish a Fifth Amendment violation in Lile v. McKune, 299 F.3d 1229 (10th Cir. 2002). On remand from the Supreme Court, the Tenth Circuit adopted the view taken by Justice O'Connor's concurring opinion in McKune v. Lile, 536 U.S. 24, 48-49 (2002). Under this view, "[t]he text of the Fifth Amendment does not prohibit all penalties levied in response to a person's refusal to incriminate himself or herself--it prohibits only the compulsion of such testimony. Not all pressure necessarily 'compel[s]' incriminating statements." Id. at 49 (O'Connor, J., concurring). Thus, for example, "noncustodial police questioning" generally does not require warnings pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), even though such "noncustodial questioning imposes some sort of pressure on suspects to confess to their crimes." Id. Similarly, the pressure to speak with other police officers that a police officer may have subjectively felt outside the context of a custodial

6

interrogation or an actual threat of loss of employment does not rise to the level of official coercion or compulsion necessary to trigger the Fifth Amendment privilege against self-incrimination.

At the Call of the Calendar, defense counsel withdrew Defendant's motion to exclude statements under Garrity, stated that an evidentiary hearing on this issue was not necessary, and acknowledged that this motion was only based on his subjective feeling that he needed to report information to other NNDPS employees in order to keep his job. Based on counsels' representations at the Call of the Calendar, the Court agrees that the statements in question are not subject to exclusion based on the interpretation of the Fifth Amendment set forth in Garrity and its progeny.  The record shall reflect that Defendant's motion to exclude evidence of his statements to Sergeant Melinda Billie, Officer Lamar Martin, Officer Tony Bicenti, Captain D.K. Thomas, Lieutenant Ed Marble, and Officer Darrell Betonie, on or after May 25, 2002, is withdrawn.

### III.   CONCLUSION

For the foregoing reasons, the Court denies Defendant's request for a jury view and grants the Government's motion to preclude or limit the testimony of Agent Georgi. The record shall reflect that Defendant's motion to exclude statements based on Garrity and its progeny is withdrawn.

**IT IS, THEREFORE, ORDERED** that Defendant Teddy  Chiquito's *Motion to Prohibit Evidence from NDPS on Garrity Grounds* [Doc. No. 63] is deemed **WITHDRAWN**.

7

**IT IS FURTHER ORDERED** that Defendant's *Motion for Jury to View Alleged Crime Scene and Related Scene with Supporting Authorities* [Doc. No. 74] is **DENIED**.

**IT IS FURTHER ORDERED** that the United States' *Motion in Limine Concerning Testimony of FBI Special Agent Robert Georgi* [Doc. No. 87] is **GRANTED** under the conditions set forth above.

**SO ORDERED** this 10th day of June, 2004, in Albuquerque, New Mexico.

						**M. CHRISTINA ARMIJO**
						UNITED STATES DISTRICT JUDGE